OPINION OF THE COURT
Hancock, Jr., J.
In this action to recover legal expenses, the question presented is whether individual trustees of the New York City Police Department Pension Funds (the Fund) may, at cost to the Fund, employ outside counsel to institute a lawsuit against other such trustees to resolve a disagreement over the proper construction of a statute governing eligibility for accident disability pension benefits. For the reasons that follow, we agree with the Appellate Division that, under the circumstances of this case, the individual trustees had no such authority and are, therefore, not entitled to reimbursement for the expenses they incurred.
The Board of Trustees of the Fund has 12 members. Eight *573 are police union officials with weighted votes totaling six; four are City of New York officials having the same collective voting strength (Administrative Code of City of New York § 13-216 [a]). The Board reviews applications for disability pension benefits, a majority vote of seven being required for a resolution of approval (§ 13-216 [b]). When an application claiming accident disability is reviewed, a 6-6 tie vote of the Board results in a denial and the applicant is granted only ordinary disability benefits (§ 13-216 [b]; see, Matter of Canfora v Board of Trustees, 60 NY2d 347, 352). The lawsuits underlying this appeal arose from a deadlock within the Board over claims of accident disability from heart disease. On one side were the union officials; on the other were those of the City.
The disagreement between the two sides centered on the proper interpretation of General Municipal Law § 207-k, commonly known as the "Heart Bill”. The statute makes special provision for policemen who, having no history of heart disease prior to employment with the City, subsequently develop "any condition of impairment of health caused by diseases of the heart, resulting in total or partial disability or death”. Under the terms of the "Heart Bill”, such policemen shall be presumed to have incurred their heart disease "in the performance and discharge of duty, unless the contrary be proved by competent evidence”. In 1979, the Corporation Counsel issued an opinion that the rebuttable presumption thus created by the statute applied only to the question whether a cardiac disability was job-related, not to whether the disability was the result of an "accident” — i.e., the result of a particular, sudden, and unexpected event (see, Matter of Knight v McGuire, 62 NY2d 563; Matter of Lichtenstein v Board of Trustees, 57 NY2d 1010). According to his opinion, the burden of proof on that latter question remained with the applicant.[1]
Not surprisingly, the City officials on the Board adopted that interpretation of the "Heart Bill” while the union officials strongly disagreed. The latter took the position that an applicant disabled by heart disease is entitled to accident benefits without having affirmatively to establish a sudden and unexpected event. The disagreement between the two *574 sides resulted in repeated tie votes on cardiac disability claims and the consequent denial of accident disability benefits. Within a short time, the eight union officials retained private counsel to represent them in various proceedings in which they challenged the City officials’ interpretation of the "Heart Bill” and negative voting on accident disability applications. Ultimately, when the action for declaratory judgment reached this court, we sustained the union officials’ interpretation of the statute (see, Matter of De Milia v McGuire, 52 NY2d 463).
Following our decision in De Milia, the union officials sought reimbursement from the Fund for expenses incurred in that litigation, as well as in the several related proceedings. When the Fund refused, the union officials commenced the instant action. Supreme Court denied defendants’ motion to dismiss reasoning that, because the union officials could not be represented by the Corporation Counsel whose opinion they were contesting, they had no choice but to retain private counsel (122 Misc 2d 576). Subsequently, Supreme Court granted the union officials’ motion for summary judgment and awarded them the full amount of the attorneys’ fees requested. On appeal, the Appellate Division reversed the orders of Supreme Court and dismissed the complaint. In a thorough opinion, that court concluded that the union officials had neither express authority to retain private counsel nor authority inherent in their duties as trustees (136 AD2d 266). We now affirm.
Disagreement among members of the Board of Trustees does not justify the retention of private counsel by those who take issue with the others’ votes and with the legal advice of the Corporation Counsel upon which those others rely. While each member of the Board of Trustees acts in a fiduciary capacity in the administration of the Fund, the authority of the Board and its individual members is determined by the statutory structure establishing that Fund and defining the Board’s function (see, Administrative Code § 13-216 [a], [b]). The statutory provisions creating the Fund (see, Administrative Code §§ 13-201 — 13-287) are, in effect, the "terms of the trust” which confer and limit the powers of the Board and of each member trustee (see, 3 Scott, Trusts § 186 [3d ed]). Those terms require that the Fund be "administered by [the] board of trustees” and that such administration be "subject to the provisions of law” (Administrative Code § 13-216 [a] [emphasis added]). They also mandate that 'fejvery act of the board of *575 trustees shall be by resolution” (§ 13-216 [b] [emphasis added]),[2] and they prohibit trustees from using Fund moneys "in any manner * * * except to make such current and necessary payments as are authorized by [the BJoard” (§ 13-238 [emphasis added]).[3] Additionally, the New York City Charter, which governs every board and officer of the City, states that the Corporation Counsel shall have exclusive responsibility for "the law business of the city and its agencies” and it unequivocally prohibits City officers and agencies from "employing] any attorney or counsel” except at their own expense in a matter which "may affect him or them individually” (NY City Charter § 394 [a]; § 395).[4] The plain language of these governing statutes provides individual members of the Board of Trustees with no authority to retain their own counsel — and, thereafter, to obtain recompense from the Fund — where neither the Corporation Counsel nor the Board, by majority resolution, has given approval.
To be sure, as the union officials point out, the Corporation Counsel could not represent both them and the City officials in the underlying litigation; nor could he have reasonably represented the union officials alone inasmuch as they were challenging his ruling. Nevertheless, they cannot rely on these circumstances to claim necessity — and, therefore, implied authority — to retain private counsel to fulfill their lawful duties. The statutes which created and govern the Fund and the *576 Board are simply devoid of any provision imposing a duty upon individual trustees to challenge either the votes of other trustees or the legal opinion of the Corporation Counsel, their attorney under the City Charter.[5] A fortiori, there is no provision granting individual trustees authority to hire outside counsel to assist them in doing so. Hence, where, as here, there is a disagreement among the trustees in the ordinary and proper course of the Board’s activities — i.e., over the construction of a statute governing the review of accident disability claims — retention of private counsel by individual trustees is ultra vires under their statutorily defined role on the Board and, therefore, not compensable by the Fund.
Strong policy reasons support this conclusion. Administration of the police pension funds is highly regulated; the detailed statutory scheme under which the Board of Trustees operates insures a balance between the interests of the City, represented by its officials, and the interests of employees, represented by members of the union. Each side has the same total number of weighted votes and each resolution before the Board must obtain a majority for approval. Thus, because the Board can only act by such resolution, the affirmative vote of at least one trustee from each side is necessary for the Board to do anything. To permit the trustees on one side to prosecute claims against the others, on routine matters of differing opinion and subject to voting, would disturb that balance and subvert the purpose for requiring majority resolutions. Further, it would encourage such litigation by dissenting trustees over decisions rendered by the Board as a whole — whether denying or granting pension benefits — with the consequent depletion of the Fund to pay for those trustees’ private attorneys’ fees (cf., Corning v Village of Laurel Hollow, 48 NY2d 348, 351-352).
Finally, the cases relied upon by the union officials — Cahn v Town of Huntington (29 NY2d 451), Matter of Commco, Inc. v Amelkin (62 NY2d 260) and Matter of Slominski v Rutkowski (62 NY2d 781) — are inapposite. Whether, under the decisions in those cases, there might be exceptional circumstances where individual trustees, like those here, could ever retain private counsel, we need not decide. No such circumstances are presented here. This is not a case like Cahn, where the *577 town planning board, acting in its statutorily defined capacity as a board, made an official decision to retain private counsel. Here, the decision to retain counsel was not by resolution of the Board acting in its official capacity, but by individual members acting on their own without any official sanction. Moreover, in Cahn, the planning board was defending itself in a proceeding instituted against it by the town; because the Town Attorney was representing the town, it was essential for the board to obtain the services of a private attorney. As we said in that case, the retention of outside counsel was necessary "to enable the board to effect the purposes of its creation and to allow it to properly function” (Cahn v Town of Huntington, supra, at 455). Here, by sharp contrast, the Board was receiving advice from its lawful attorney, the Corporation Counsel, and was fully able to serve its statutory purpose. Though the Board’s decisions on certain cardiac disability applications were ultimately held to be erroneous, it cannot be said that the Board was not "properly functioning]” — i.e., applications for accident disability were being reviewed, votes were being taken, and decisions were being rendered in the manner prescribed by the governing statutes.
Neither is the situation here comparable to that in Commco, where we upheld the retention of private counsel by a zoning board, even though the municipal attorney was, by statute, the exclusive legal representative of all municipal agencies. There, a conflict of interests arose between the board and the municipality itself and, as a result, the municipal attorney was precluded from representing the board in a proceeding brought by a dissatisfied applicant. In order to fulfill its statutory responsibilities, the board, we held, had implied authority under Cahn to retain its own counsel in order to defend itself. In the present case, however, the Corporation Counsel could and did represent the Board of Trustees in the underlying litigation, and the Board’s decisions were challenged, not externally by a dissatisfied applicant as in Commco, but internally by individual Board members who had neither statutory responsibility nor authority to do so.
Lastly, this case is not analogous to Slominski. There, the underlying dispute was between two high level municipal officers over competing claims of official authority. Because the municipal attorney represented the county executive, the comptroller retained private counsel. This court agreed with the Appellate Division that, under the circumstances of that case, the comptroller should be reimbursed for attorneys’ fees. *578 The litigation there did not simply involve an "internal dispute between lower echelon officials” and, moreover, the comptroller had unquestioned authority to bring the proceeding in her official capacity (Matter of Slominski v Rutkowski, 91 AD2d 202, 212, affd as mod in other respects 62 NY2d 781, supra). Here, however, the underlying litigation for which the union officials seek to recover legal expenses did merely entail, as they themselves have described it, an internal dispute between individual trustees, over decisions rendered collectively as members of a single governmental entity, the Board of Trustees. Also, in contrast to the comptroller in Slominski, the union officials here were not seeking to resolve a dispute about their own legitimate authority; they did not, therefore, have any such compelling official need to bring the underlying lawsuits.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order affirmed, with costs.

. The opinions of Corporation Counsel have varied on this point. In August 1973, the "Heart Bill” presumption was interpreted, as in 1979, as applying only to whether the disability was line of duty and not to whether it was an accident. In November of that same year, however, Corporation Counsel reversed itself and interpreted the presumption as applying to both questions.

. Section 13-216 (b) of the Administrative Code of the City of New York provides: "Every act of the board of trustees shall be by resolution which shall be adopted only by a vote of at least seven-twelfths of the whole number of votes authorized to be cast by all of the members of such board.”

. Section 13-238 of the Code provides, in pertinent part: "The trustees and such employees, directly or indirectly, for themselves or as agents or partners of others, shall not borrow any of its funds or deposits or in any manner use the same except to make such current and necessary payments as are authorized by such board”.

. Section 394 (a) of the Charter provides: "Except as otherwise provided in this chapter or other law, the corporation counsel shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested.”
Section 395 of the Charter provides, in pertinent part: "No officer or agency, except as provided in this chapter or otherwise especially provided, shall have or employ any attorney or counsel, except where a judgment or order in an action or proceeding may affect him or them individually or may be followed by a motion to commit for contempt of court, in which case he or they may employ and be represented by attorney or counsel at his own or their own expense.”

. This is not to say, of course, that these same trustees were without standing to initiate litigation to challenge Board actions in -their capacities as union representatives.