■ In the Matter of EDDIE MALDONADO, Appellant, v RAYMOND KELLY, as Police Commissioner of the City of New York and as Chairman of the Board of Trustees of the Police Penson Fund, Article II, et al., Respondents. [927 NYS2d 344]—

Petitioner, a police officer, was assigned to the World Trade Center site shortly after September 11, 2001. In connection with the recovery effort, he performed security duties, escorted electrical engineers and food trucks, and distributed supplies. In late summer 2001, but before September 11, petitioner noticed a pulling sensation in his left thigh. Shortly after the terrorist attack, he felt a walnut-sized lump in the same area. In

November 2001, a biopsy was performed on the lump, revealing it to be a high-grade, soft-tissue sarcoma, which is a malignant tumor arising in connective tissue. On February 12, 2002, petitioner underwent a surgical procedure to remove the sarcoma, which included removal of most of the muscles from his anterior thigh. After the surgery, petitioner began receiving chemotherapy. The sarcoma in his left thigh then metastasized to his sacrum, lumbosacral spine, and other bones.

On December 15, 2006, petitioner filed an application for accident disability retirement (ADR) pension benefits with the Police Pension Fund. He stated in the application that he was disabled from performing police duties due to cancer and related conditions that developed as a result of his working at the World Trade Center site. The Police Commissioner issued an order directing the Medical Board to examine petitioner and his medical record to determine whether the disability was obtained in the line of duty, which would entitle petitioner to an ADR pension; if not, he would be retired on ordinary disability retirement (ODR).[1]

On April 18, 2007, the Police Pension Fund Medical Board evaluated petitioner's application. As reflected in its minutes, the Medical Board examined the medical evidence, provided a brief summary of the history and findings therein, interviewed and examined petitioner, gathered additional history of his complaints, and noted various medical findings. The Medical Board acknowledged that petitioner was disabled from performing police duties due to the diagnosis of cancerous sarcoma. However, in paragraph 54 of the minutes, the Board concluded that "the proximity of the diagnosis of the disease to the September 11, 2001 World Trade Center exposure is competent evidence that the exposure was not the etiology of the sarcoma." Accordingly, the Board recommended ODR.

On October 9, 2007, petitioner's physician, who had been treating him since 2003, sent a letter to the Police Department in response to the Board's findings. The letter stated, in its entirety, "With regard to [paragraph] 54 of the [minutes]: While the proximity of the diagnosis of soft tissue sarcoma to the September 11, 2001 World Trade Center exposure suggests that the exposure not to be [sic] the etiology of the sarcoma, it does not rule out the possibility the exposure at the World Trade Center may have stimulated factors such as angiogenesis factors which may have accelerated the metastatic potential of the

---

1. A World Trade Center ADR pension provides a recipient with a three-quarters final salary tax-free pension, while an ODR pension provides a recipient with a one-half pay taxable pension.

sarcoma. [Petitioner] did develop metastatic disease to the bone and lungs soon after the initial diagnosis."

In January 2008, the Medical Board reconsidered the application, taking into consideration the letter and another interview of petitioner. The Board was not persuaded by the letter and reaffirmed its decision. In May 2008, at petitioner's request, the Pension Fund Board of Trustees remanded the case to the Medical Board for further evaluation of the application and reexamination of petitioner, and for new evidence to be submitted.

In September 2008, plaintiff's physician sent another letter to the Medical Board, in which he stated, "As I had stated in my letter from 10/9/07, it is scientifically difficult to ascribe the etiology of this rare tumor (liposarcoma) to any specific environmental exposure, such as the World Trade Center disaster, but the rapid growth of the tumor is remarkable and suggests that this is not an indolent slow-growing tumor which may have started many months prior to the diagnosis."

On September 17, 2008, petitioner's case was again considered by the Medical Board. In adhering to its decision to grant petitioner only an ODR retirement, the Medical Board noted that petitioner's physician could only "*speculate* that the exposure may have accelerated the growth of the preexisting tumor." On March 11, 2009, the Board of Trustees, by a six-to-six vote, determined that petitioner's World Trade Center exposure was not the etiology of his condition, and it denied his application for ADR.[2]

Petitioner filed this article 78 petition, alleging that respondents' denial of his application for ADR was "arbitrary, capricious, unreasonable and unlawful." The petition sought the annulment of respondents' determination and an order directing respondents to award him an ADR pension. Petitioner invoked the World Trade Center presumption, codified at Administrative Code of the City of New York § 13-252.1, entitled "Accidental disability retirement; World Trade Center presumption" which provides: "1. (a) Notwithstanding any provisions of this code or of any general, special or local law, charter or rule or regulation to the contrary, if any condition or impairment of health is caused by a qualifying World Trade Center condition as defined in section two of the retirement and social security law, it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result

---

**2.** It is "a time-honored procedural practice" that, where the Board of Trustees is deadlocked, the applicant is denied ADR and granted ODR (*Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139, 144-145 [1997]).

of an accident not caused by such member's own willful negligence, unless the contrary be proved by competent evidence."

The court denied the petition and dismissed the proceeding, finding that petitioner had not met his burden of demonstrating that the Board of Trustees' pension determination was arbitrary and capricious or contrary to law. The court held that, based on the Medical Board's repeated consideration of the medical examinations, interviews and tests, including those performed by petitioner's physicians, the Board of Trustees had a rational basis for its determination that the World Trade Center presumption of causation had been overcome and that petitioner's World Trade Center work did not cause or exacerbate his cancer or its metastasis. Noting that the onset of petitioner's symptoms and the size and advanced state of the cancer appeared in close temporal proximity to September 11, 2001, the court found that petitioner's physician's speculation that petitioner's World Trade Center work could have caused or exacerbated his condition was properly rejected by respondents.

Disability retirement applications by police officers invoking World Trade Center-related injuries differ from usual applications insofar as the burden of proof is shifted to the police department respondents. So long as the petitioner can establish that he or she worked the requisite number of hours at the site and was diagnosed with one of the enumerated medical conditions, the respondents bear the ultimate burden of establishing that a qualifying injury was *not* incurred in the line of duty (*see* Administrative Code § 13-252.1 [1] [a]). However, a determination by the Board of Trustees that the Medical Board properly found a lack of causation is entitled to the deference ordinarily due an agency determination in an article 78 proceeding. In other words, so long as the determination is rationally based, is not arbitrary, capricious, an abuse of discretion or contrary to law, a reviewing court is obliged to affirm it (*Matter of Jefferson v Kelly*, 51 AD3d 536 [2008]). The existence of "credible evidence" supporting the Medical Board's decision is a sufficient basis for a reviewing court to determine that the Board of Trustees correctly found that the Medical Board rebutted the World Trade Center presumption (*see Matter of Claudio v Kelly*, 84 AD3d 667 [2011]; *Matter of Kelly v Kelly*, 82 AD3d 544 [2011]).

In this proceeding, respondents do not dispute that petitioner worked the minimum number of hours required for the World Trade Center presumption to attach, or that his condition is one of the qualifying injuries enumerated in the Retirement and Social Security Law. Furthermore, there is no dispute, as

petitioner has effectively conceded, that there is no causal link between the initial onset of petitioner's cancer and the conditions at the World Trade Center site on and after September 11, 2001. Rather, it is petitioner's position that his work at the World Trade Center site aggravated his cancer. However, in attempting to support this theory before the Medical Board, petitioner offered only his own treating physician's letters, which acknowledged that there was no proof that the World Trade Center site environment caused petitioner's cancer, and only speculated that the cancer spread rapidly because of that environment. Indeed, the doctor's comment in his September 2008 letter to the Medical Board that "rapid growth of the tumor is remarkable and suggests that this is not an indolent slow-growing tumor" is not supported by any medical evidence. Nor did petitioner's doctor even state that, in his medical opinion, it was more likely than not that the rapid growth of the tumor was related to petitioner's work at the World Trade Center site.

The 2008 letter from petitioner's doctor did not buttress his letter of October 2007, which was suffused with equivocal language. In that letter he stated that petitioner's "exposure . . . does not rule out the *possibility* the exposure at the World Trade Center *may have* stimulated factors such as angiogenesis factors which *may have* accelerated the metastatic potential of the sarcoma" (emphasis added). Together, these two letters cannot be viewed as anything but bare conjecture. The existence of evidence so equivocal lends credence to the Board of Trustees' determination that the presumption was rebutted (*see Matter of Callaghan v Bratton*, 253 AD2d 390 [1998]). Further, the Medical Board was not required to identify the actual cause of the rapid metastasis; it was sufficient for it to demonstrate that nothing in the record constituted evidence of causation (*see Matter of Stegmuller v Brown*, 216 AD2d 23 [1995], *lv denied* 87 NY2d 807 [1996]). Thus, we find that credible evidence supports the Medical Board's determination, adopted by the Board of Trustees, that the aggravation of petitioner's cancer was not caused by the World Trade Center site conditions.

This decision should not be viewed as a diluting of the World Trade Center presumption, which was enacted in recognition of the enormous sacrifice made by those public employees who assisted in the recovery from the World Trade Center attacks. Rather, it reflects the unique facts of this case, where not even petitioner's own physician could offer more than a wholly equivocal, speculative opinion on causation. Accordingly, the court properly found that respondents rebutted the World Trade

Center presumption. Concur—Tom, J.P., Mazzarelli, Acosta, Renwick and Freedman, JJ.