OPINION OF THE COURT
Lucy Billings, J.
I. Background
Respondent Board of Trustees of the Police Pension Fund granted petitioner, a New York City police officer, ordinary disability retirement on July 9, 2008, based on a diagnosis of major depression. On May 8, 2009, petitioner applied for reclassification of her ordinary disability retirement to accidental disability retirement (ADR) due to posttraumatic stress disorder (PTSD) she sustained from her work at the World Trade Center site after the terrorist attacks September 11, 2001. On July 20, 2009, respondents’ medical board recommended denial of ADR on the *379 ground that family factors arising in 2006 and 2007 caused her depression, rather than her service as a police officer on or after September 11, 2001. The medical board reviewed petitioner’s application twice more, but reaffirmed its determination. Adopting the findings of the medical board, respondent Board of Trustees denied petitioner ADR benefits July 14, 2010.
In this proceeding pursuant to CPLR article 78, petitioner seeks to annul the determination denying her ADR as arbitrary and capricious or to require respondents to review her application once again. (CPLR 7803 [3]; Administrative Code of City of NY § 13-252.1.) Petitioner also seeks respondents’ production of specified documents, but nowhere indicates the grounds for this request.
In sum, even though petitioner benefits from the presumption of an accidental disability due to work at the World Trade Center site on and following September 11, 2001, respondents need only present relevant, credible evidence supporting a contrary conclusion to rebut the presumption. They need not attack the conclusions by petitioner’s treatment providers directly and show that they are unsupported or unscientific. Nor does respondents’ uncodified, nonmandatory instruction, that their medical board explain its rejection of outside physicians’ contrary conclusions, impose a binding requirement for rebuttal more stringent than the applicable precedent.
Nothing in the current record, however, dispels the observations by petitioner’s expert that respondents’ psychological evaluations supporting their denial of ADR never explored her World Trade Center experience. Such a failure to conduct the relevant examination is no less arbitrary than failing to consider other relevant medical evidence, which is grounds for a remand, nor is a medical conclusion that is not based on such an examination any more supported by relevant, credible evidence than a conclusion lacking other medical support. Therefore the court remands the proceeding for a review of whether respondents’ evaluations avoided focusing on the source of petitioner’s disability that her treatment providers diagnosed and, if so, a reevaluation. A further evaluation must examine that identified source and address whether her World Trade Center work contributes to her disability.
II. Applicable Standards
In reviewing respondents’ determination regarding disability, the court must defer to the medical board’s determination of causation and uphold it if rationally based and not arbitrary, *380 capricious, an abuse of discretion, or contrary to law. (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996]; Maldonado v Kelly, 86 AD3d 516, 519 [1st Dept 2011]; Matter of Claudio v Kelly, 84 AD3d 667 [1st Dept 2011]; Matter of Jefferson v Kelly, 51 AD3d 536 [1st Dept 2008]; see Linden Airport Mgt. Corp. v New York City Economic Dev. Corp., 71 AD3d 501, 502 [1st Dept 2010]; Valentin v New York City Police Pension Fund, 16 AD3d 145 [1st Dept 2005]; Matter of City of New York v O’Connor, 9 AD3d 328 [1st Dept 2004].) Physical or mental incapacity to perform city service qualifies a police officer for ordinary disability retirement. (Administrative Code § 13-251.) If that incapacity is “a natural and proximate result of an accidental injury received in such city-service,” the police officer is eligible for ADR. (Administrative Code § 13-252.) Incapacity resulting from “a qualifying World Trade Center condition as defined in section two of the retirement and social security law” is presumptive evidence of an injury incurred as a “result of an accident” in the performance of service. (Administrative Code § 13-252.1 [1] [a]; Maldonado v Kelly, 86 AD3d at 518.) Both depression and PTSD are qualifying conditions. (Retirement and Social Security Law § 2 [36] [a], [b], [d].)
The medical board’s medical examination must establish disability. (Administrative Code §§ 13-251, 13-252.) Thus the medical board’s fact-finding process requires (1) determining whether the applicant is physically or mentally incapable of performing city work and (2) whether an “accidental” injury while in service proximately caused the applicant’s disability to perform that work. (Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d 139, 144 [1997]; Borenstein v New York City Employees’ Retirement Sys., 88 NY2d at 760.) The medical board’s determination must be supported by substantial evidence, which must be credible, relevant evidence reasonably adequate to support a fact or conclusion. (Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, 239 [1997]; Borenstein v New York City Employees’ Retirement Sys., 88 NY2d at 760.) Credible evidence is evidence from a reliable source, which must reasonably tend to support the fact or conclusion for which the evidence is offered, as long as it is neither conjecture nor simply a conclusion itself. (Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d at 147; Matter of Cusick v Kerik, 305 AD2d 247, 248 [1st Dept 2003].)
*381 The presumption of an accidental disability from work in the line of duty at the World Trade Center site on or following September 11, 2001, provided by Administrative Code § 13-252.1 (1) (a), shifts the burden of proof to respondents to show that the disabling condition did not arise from work at the World Trade Center site after the terrorist attacks. (Maldonado v Kelly, 86 AD3d at 519.) Credible medical evidence that the applicant’s condition from work at the site on or following September 11, 2001 did not cause her disability thus is required to rebut the presumption. (Administrative Code § 13-252.1; Maldonado v Kelly, 86 AD3d at 519; Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 86 AD3d 427 [1st Dept 2011]; Matter of Velez v Kelly, 84 AD3d 693 [1st Dept 2011]; Matter of Claudio v Kelly, 84 AD3d 667 [2011].)
III. Petitioner’s Accidental Disability Retirement Claim
Petitioner claims entitlement to ADR based on major depressive disorder and PTSD caused by her recovery work after the terrorist attacks. She maintains that respondents’ denial of ADR failed to apply the required standards in evaluating the cause of her disability, reaching a conclusion contrary to the evidence, and disregarding their own rules.
A. Basis for Petitioner’s ADR Claim
Petitioner presented evidence that she suffered from depression and PTSD, which her experts concluded arose from her service on and after September 11, 2001. Justin Germaine, a licensed clinical social worker, began treating petitioner October 30, 2006, for symptoms of an adjustment disorder and PTSD. Germaine found that petitioner’s posttraumatic stress reaction to her work following the attacks September 11, 2001 exacerbated the loss petitioner experienced from her sibling’s later suicide, when she suffered a severe grief reaction with depression and anxiety. Psychologist Joseph Andrews Ph.D. evaluated petitioner November 13, 2008, and diagnosed both major depressive disorder and PTSD. Frank Dowling M.D., who treated petitioner in 2009 for chronic depression and PTSD, found, in contrast yet still consistent with Germaine, that her brother’s death in 2006 exacerbated symptoms she already was experiencing.
Ernest Leuci M.A., a licensed clinical social worker, treated petitioner from September 2008 through February 2010 for recurrent major depression, PTSD, and anxiety disorder. In his report December 27, 2008, Leuci specifically found, more consis *382 tent with Dr. Dowling, that petitioner’s debilitating symptoms after her daughter’s birth juxtaposed with her brother’s death forced petitioner to confront her own mortality as she had on September 11, 2001, and in the recovery operations, triggering her PTSD and depression. In short, when exposed to a life versus death stimulus and forced to confront it, she no longer could suppress her fears from her World Trade Center experience. Leuci also specifically denied that petitioner’s family difficulties caused her mental conditions. Like both Dr. Dowling and Germaine, Leuci concluded that petitioner’s conditions arose from her work relating to the attacks September 11, 2001, and disabled her from working.
B. Respondents’ Rebuttal Evidence
Given petitioner’s evidence, respondents bore the burden to rebut the presumption that her service in recovery operations on or after September 11, 2001 caused her disabling conditions. The presumption prevails “unless the contrary be proved by competent evidence.” (Administrative Code § 13-252.1 [1] [a].) As set forth above, the evidence sufficient to rebut the presumption need only be relevant, credible evidence supporting the medical board’s contrary conclusions. The medical board need only demonstrate this requisite support for the board’s own conclusions and need not demonstrate that the conclusions by petitioner’s treatment providers are unsupported or unscientific. (Maldonado v Kelly, 86 AD3d at 519; Matter of Claudio v Kelly, 84 AD3d 667 [2011]; Matter of Kelly v Kelly, 82 AD3d 544 [1st Dept 2011]; Jefferson v Kelly, 51 AD3d at 537.)
Respondents rely on the lack of evidence that petitioner received any treatment after her service September 11, 2001, through 2006, before her family difficulties occurred. Melissa Bochicchio Psy.D., a psychologist for respondent New York City Police Department’s Psychological Evaluation Section, initially examined petitioner in May 2007 and found her moderately to severely depressed. Petitioner reported suffering depression for several years, worsening around when she met her husband, and identified factors contributing to her depression and exacerbating her symptoms, including her daughter’s learning disability, hostility from the Police Department, one brother’s incarceration for shooting a police officer, and another brother’s suicide in October 2006. Dr. Bochicchio noted that petitioner also reported respiratory problems and attributed her daughter’s learning disability to petitioner’s work at the World Trade *383 Center site, but denied preoccupation with the World Trade Center work and maintained she could return to the site without difficulty. Petitioner continued to exhibit symptoms of depression at follow-up examinations in June and July 2007. Dr. Bochicchio diagnosed petitioner with “Major Depressive Disorder, recurrent, moderate.” (Verified answer, exhibit 21 at 4.)
Arthur Knour Ph.D., director of the New York City Police Department’s Psychological Evaluation Section, interviewed petitioner June 13, 2007, and found that she had been mildly depressed for a long time, but her brother’s suicide caused her acute, severe depression, and she began treatment in October 2006 after her brother’s death. Dr. Knour also diagnosed petitioner with major depressive disorder. Both Dr. Bochicchio and Dr. Knour concluded that petitioner could not perform police work, but denied that she suffered PTSD.
The determinations by both respondents’ experts, that petitioner’s conditions resulted from various familial problems and stresses, formed the basis for respondents’ denial of ADR. (See e.g. Maldonado v Kelly, 86 AD3d at 519; Matter of Kelly v Kelly, 82 AD3d 544 [2011]; Matter of Casiano v Brown, 209 AD2d 182, 183 [1st Dept 1994].) Other plausible conclusions do not warrant reversal of the agency’s determination. (Jennings v New York State Off of Mental Health, 90 NY2d at 239.) Even though petitioner’s evidence contradicts respondents’ evidence, the sole authority to resolve conflicting medical evidence rests with the medical board. (Borenstein v New York City Employees’ Retirement Sys., 88 NY2d at 761; Matter of Kelly v Kelly, 82 AD3d 544 [2011]; Matter of Kiess v Kelly, 75 AD3d 416, 417 [1st Dept 2010].) Although the medical board’s failure to consider the reports of petitioner’s treating professionals would mandate a reversal of its determination (Kiess v Kelly, 75 AD3d at 417), the record here shows that it did consider that evidence, when it summarized each new report petitioner submitted. (Verified answer, exhibits 8, 12, 15, 18.) Again the standards for the medical board’s rebuttal do not require the board to attack each report directly and break it down.
The medical board, upon its review as early as its report November 30, 2009, relied on the lack of medical evidence regarding petitioner’s mental disorder for five years following September 11, 2001, yet the reports by Leuci and Dr. Dowling after November 2009 never address that issue. The medical board noted Germaine’s diagnosis of PTSD, but was entitled to reject it because it was conclusory. (Velez v Kelly, 84 AD3d at *384 694.) While exacerbation of a prior condition provides a basis for disability (Matter of Tobin v Steisel, 64 NY2d 254, 257 [1985]; Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 86 AD3d at 428; Matter of Petrella v Board of Trustees of Police Pension Fund, 141 AD2d 361, 363 [1st Dept 1988]), and petitioner’s treatment providers concluded that her brother’s death exacerbated her mental conditions, petitioner still failed to present evidence establishing her depression or other abnormal mental condition during the five years following September 11, 2001, and before her brother’s death. This lack of medical or psychological evidence permits respondents’ conclusion that her World Trade Center experience neither (1) exacerbated a prior abnormal mental condition that became disabling nor (2) caused an underlying abnormal mental condition that later tragedy stimulated and exacerbated so as to disable petitioner from coping with either the tragedy or the demands of police work.
The Board of Trustees adopts its determinations by a simple majority of votes. (Administrative Code § 13-216 [b]; Caruso v New York City Police Dept. Pension Funds, Arts. 1 & 2, 72 NY2d 568, 573 [1988].) A tie vote on ADR claims constitutes a denial of the ADR claim and therefore a determination of only ordinary disability retirement. (Caruso v New York City Police Dept. Pension Funds, Arts. 1 & 2, 72 NY2d at 573; Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 60 NY2d 347, 351-352 [1983]; Kenny v New York City Tr. Auth., 275 AD2d 639, 640 [1st Dept 2000].) Since a denial of ADR by a deadlocked vote does not produce any more of a factual determination to be reviewed than a majority vote that simply accepts the medical board’s finding, the deadlock does not provide a ground for the court to act as the tiebreaker and reverse the ADR denial. (Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d at 144-145; Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 60 NY2d at 352; Maldonado v Kelly, 86 AD3d at 518 n 2.)
Consequently, to set aside the six to six tie vote denying petitioner’s ADR application (verified answer, exhibit 20), the court may not apply any lower standard than had the denial been by a unanimous vote accepting the medical board’s recommendation; the court may reverse the denial only if disability from the service related condition may be determined as a matter of law. (Meyer v Board of Trustees of N.Y. City Fire Dept., *385 Art. 1-B Pension Fund, 90 NY2d at 145; Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 60 NY2d at 352; Cusick v Kerik, 305 AD2d at 248.) Respondents’ credible evidence that petitioner’s family circumstances, rather than her work related to the attacks September 11, 2001, caused her disabling condition (Matter of Wahl v Board of Trustees of N.Y. City Fire Dept., 89 NY2d 1065, 1067 [1997]; Matter of Claudio v Kelly, 84 AD3d 667 [2011]; Matter of Kelly v Kelly, 82 AD3d 544 [2011]; Matter of Jefferson v Kelly, 51 AD3d 536 [2008]), requires the court to uphold the denial (Meyer v Board of Trustees of N.Y. City Fire Dept., Art 1-B Pension Fund, 90 NY2d at 145; Cusick v Kerik, 305 AD2d at 248), and precludes the court from finding that, absent her World Trade Center work, petitioner would not be disabled.
C. Respondents’ Failure to Follow Rules
Petitioner also claims respondents failed to follow a procedural instruction requiring that the medical board affirmatively explain its rejection of outside physicians’ contrary conclusions, thus imposing a stricter standard than the requirements for rebuttal established by the applicable precedent cited above. Although the medical board considered the reports of Dr. Dowling, Germaine, and Leuci, it did not explain its disagreement with those professionals’ opinions.
This instruction is not codified in either a statute or a regulation that would give the procedure binding effect. (Matter of Dickinson v Daines, 15 NY3d 571, 575 [2010].) The relief available for an administrative agency’s violation of a procedure, even when codified in a regulation, depends on whether the regulation is mandatory, requiring strict enforcement and thus entitling an aggrieved person to relief. (Matter of Syquia v Board of Educ. of Harpursville Cent. School Disk, 80 NY2d 531, 536 [1992].) Whether a regulation is mandatory in turn depends on an evaluation of its language and purpose. (Id.)
The instruction petitioner relies on provides that, if “the Medical Board disagrees with a report submitted by another physician, the Medical Board should briefly explain why it does not accept the outside physician’s conclusion.” (Verified petition, exhibit E [emphasis added].) The term “should” is merely directory and not mandatory. (See Dickinson v Daines, 15 NY3d at 574, 577.) Since this instruction is merely directory, and petitioner fails to demonstrate prejudice from respondents’ noncompliance with the instruction, it provides no basis for *386 reversing the denial of petitioner’s application for ADR, unless the instruction is incorporated in other binding authority. (Matter of Louis Harris & Assoc. v deLeon, 84 NY2d 698, 705 [1994]; Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d at 536; Matter of Davids v City of New York, 72 AD3d 557, 558 [1st Dept 2010]; see Matter of Kolmel v City of New York, 88 AD3d 527, 528 [1st Dept 2011]; Matter of Blaize v Klein, 68 AD3d 759, 761 [2d Dept 2009].)
D. Avoidance of Petitioner’s Disabling Condition by Respondents’ Evaluators
The record does reveal a single but disturbing basis for a remand to respondents for a reevaluation of petitioner’s claim. Ernest Leuci’s report, dated December 27, 2008, discusses petitioner’s anguish over the Police Department’s willingness to expose her to the extraordinary risk of World Trade Center Tower 7 collapsing. Referring to this exposure, Leuci recounts the following observations of petitioner’s interactions with the Department’s Psychological Services Unit: “when she confided her depression, anxiety and trauma to the assigned psychologist, her exposure was minimized and summarily dismissed as unrelated to 9-11-01.” (Verified answer, exhibit 25 at 4.) This dismissal caused petitioner “to withhold her true feelings,” allowing “the psychologist to set the tone and topics of discussions during their sessions.” (Id.) In his report dated September 17, 2009, he elaborates
“that the assessing Psychological Services psychologist, Dr. Bocchicco had no difficulties getting the patient to speak of her marriage and the death of her brother. It seems apparent from a review of that psychologist’s notes which I have . . . that when the topic concerned events of 9-11-01, an avoidance of this topic occurred. Yet, the psychologist did not pursue this area of distress with the patient.”
“I must also observe that the patient on numerous occasions during our sessions stated that when she, the patient, attempted to seek comfort and relief in her attempts to discuss her experiences on and after 9-11-01, the patient advised this writer that Dr. Bocchicco redirected her away from the most traumatic event in the patient’s life and returned to the issues of her family. I also observe that the patient mentioned 9-11-01 several times during the administration of the MMPPI while at Psych Services but no *387 follow-up or further inquiries were made by the assessing psychologist. The patient did not have any difficulties discussing familial matters. That was a topic of discussion the patient felt able to discuss as this did not evoke the distress as did 9-11-01.” (Id., exhibit 29 at 4.)
The medical board’s recommendation to deny petitioner ADR on July 20, 2009 relied only on “intrafamilial factors in the years 2006 and 2007” to rebut the World Trade Center presumption. (Id., exhibit 12 at 2.) The medical board adhered to these same grounds each time the board reviewed petitioner’s subsequent reports from her treatment providers.
The medical board’s reliance on familial factors stems directly from Dr. Bochicchio’s reports and records. Although Dr. Arthur Knour’s report also supports the grounds for respondents’ denial of ADR, his report summarily concurs with and endorses Dr. Bochicchio’s conclusions.
Leuci’s assessment of Dr. Bochicchio’s evaluations, as having steered away from and avoided a focus on the source of petitioner’s disability that her treatment providers diagnosed, may be unfounded, since Leuci did not witness Dr. Bochicchio’s examinations. Nevertheless, Leuci’s assessment is based at least in part on Dr. Bochicchio’s own reports and records and, at minimum, warrants respondents’ review as to whether his assessment is in fact well founded. Nothing in the current record dispels Leuci’s observations that respondents’ psychological evaluations of petitioner never explored her World Trade Center experience and instead focused on her other experiences.
Respondents may not steer away from an examination of petitioner’s symptoms, her conditions, and their causes found by her treatment providers and find another exclusive cause of her disability, any more than a physician may avoid examining an injured lower extremity and find that the sole cause of impaired mobility is a spinal condition. (Tobin v Steisel, 64 NY2d at 257; Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 86 AD3d at 428; Petrella v Board of Trustees of Police Pension Fund, 141 AD2d at 363.) Failing to conduct the relevant examination is no less arbitrary than failing to consider other relevant medical evidence: an established basis for a remand. (Kiess v Kelly, 75 AD3d at 417.) A medical conclusion that is not based on such an examination is no more supported by relevant, credible evidence than a conclusion lacking other medical support. (Jennings v New York *388 State Off. of Mental Health, 90 NY2d at 239 [1997]; Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d at 147; Borenstein v New York City Employees’ Retirement Sys., 88 NY2d at 760.) The medical board’s denial of ADR premised on evaluations that did not fully examine petitioner’s diagnosed condition and its cause likewise lack a rational basis. (Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 86 AD3d at 427-428; Cusick v Kerik, 305 AD2d at 248, 253.)
IY Conclusion
This record thus leaves open a significant question whether respondents’ denial July 14, 2010, of petitioner’s application for accidental disability retirement complied with lawful procedure; was supported by a rational basis, including relevant evidence; and was not arbitrary. (CPLR 7803 [3], [4].) Therefore the court remands this proceeding to respondents to review whether their psychological evaluations of petitioner avoided focusing on the source of her disability that her treatment providers diagnosed. If respondents determine that their prior evaluations avoided this issue, respondents shall reevaluate petitioner, examine that identified source, address whether it does in fact cause her undisputed disabled condition, and thus determine the extent to which her World Trade Center work contributes to her disability. (CPLR 7806.)
Since petitioner has not explained her reason or purpose in requesting that respondents produce documents, the court denies this request as unsupported. If her request is not academic in light of this disposition, because she needs those documents in the further administrative proceedings, she may present her request to respondents in conjunction with the remand and review. This decision constitutes the court’s order and judgment granting the petition to the extent set forth and otherwise denying the petition and dismissing this proceeding.