OPINION OF THE COURT
Manzanet-Daniels, J.
Petitioner William Dement brings this CPLR article 78 proceeding to challenge respondents’ denial of his application for a World Trade Center (WTC) line-of-duty accident disability retirement (ADR) pension upon a determination that there is no causal connection between his disability and his actions as a first responder at the World Trade Center site.
Petitioner was a lieutenant with the New York Police Department (NYPD) on the date of the 9/11 attacks. On September 14, 2001, he performed a 12-hour tour of duty at the World Trade Center site. During September, October and November 2001, petitioner was assigned to the Fresh Kills landfill on Staten Island in connection with 9/11 recovery and investigative work. Petitioner alleges that starting in November 2001, he experienced labored breathing, persistent heavy coughing, chest congestion, nasal fluid and throat discharge.
In late 2002, petitioner applied for a disability pension, alleging that he had “difficulty in breathing,” caused by exposure to the WTC site and the landfill. He was found, at that time, not to be disabled. Petitioner’s conditions worsened following his retirement, and in 2007, he applied for a WTC-ADR disability pension under the WTC Law, which establishes a presumption that “if any condition or impairment of health is caused by a qualifying World Trade Center condition” as defined in the Retirement and Social Security Law, “it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident. . . unless the contrary be proved by competent evidence” (Administrative Code of City of NY § 13-252.1 [1] [a]).[1] This presumption extends to WTC rescue workers who, like petitioner, have *226 retired on a disability pension and subsequently seek a reclassification.
In his initial application, petitioner alleged that he was disabled due to WTC cough, RADS (reactive airway dysfunction syndrome), asthma, gastroesophageal reflux disease (GERD), esophagitis, sinusitis, chronic rhinitis and severe sleep apnea. Petitioner alleged that these conditions resulted in, inter alia, chronic cough, difficulty breathing, severe stomach indigestion, and obstructive sleep apnea which prevented him from sleeping and resulted in excessive daytime sleepiness. Petitioner also filed an updated application for reclassification requesting that his service retirement pension be reclassified as an ADR pension pursuant to the WTC Law. In his application for reclassification, petitioner similarly alleged that he suffered from diseases of the respiratory and gastroesophageal tracts.
On or about August 10, 2007, the Medical Board recommended approval of the application for ordinary disability retirement (ODR) and disapproval of the application for ADR. The board determined that petitioner was disabled “due to his sleep deprivation secondary to his severe sleep apnea,” but found no medical evidence to substantiate the allegation that petitioner’s sleep apnea was related to environmental exposure. The board’s report did not discuss the contributory effect, if any, of petitioner’s nighttime gastric reflux to his sleep deprivation.
Petitioner was permitted under respondents’ procedural rules to adduce additional medical evidence and to have his case remanded to the Medical Board for re-evaluation. In support of his application, petitioner submitted additional medical records, including reports from Dr. James Baum diagnosing him with GERD as well as heavy metal poisoning, specifically lead and aluminum toxicity, for which petitioner underwent chelation therapy. Petitioner also submitted a report from Dr. Milagros Diaz Teves-Mani of the World Trade Center Medical Monitoring and Treatment Program diagnosing him as suffering from, inter alia, GERD, Barrett’s esophagus,[2] and sleep apnea secondary to WTC exposure. During his physical examination, petitioner complained to the Medical Board doctors of acid reflux at night, shortness of breath and constant fatigue.
*227 On or about March 21, 2008, the Medical Board reaffirmed its prior decision recommending approval of petitioner’s application for ODR and disapproval of his application for disability under the WTC Law, finding that sleep apnea had not been shown to be a sequela of exposure at the World Trade Center. The final diagnosis was sleep deprivation secondary to sleep apnea.
On August 8, 2008, petitioner’s new attorney wrote to the executive director of the Board of Trustees seeking an upgrade of petitioner’s recommended pension from ODR to WTC-ADR. He submitted additional evidence demonstrating that petitioner’s sleep apnea was connected to WTC exposure and that several of his recognized WTC ailments, including respiratory and gastrointestinal tract illnesses and heavy metal poisoning, were disabling in and of themselves. Petitioner’s attorney submitted, inter alia, a May 1, 2008 report from Dr. Diaz Teves-Mani in which she opined that petitioner suffered from a number of ailments causally related to WTC exposure, including GERD and obstructive sleep apnea; an April 29, 2008 report from Karen B. Mulloy, D.O., Director of the Denver Health Center for Occupational Safety and Health, explaining the causal connection between petitioner’s various WTC illnesses and his sleep apnea and sleep deprivation; a June 17, 2008 report from Dr. Denise Janus in which she opined, inter alia, that petitioner’s ailments, including his sleep apnea, were the direct result of his exposure to toxins at the WTC site; a July 22, 2008 report from James E. Baum, DO, who was overseeing petitioner’s chelation therapy for heavy metal poisoning, in which he opined that heavy metals had played a “major role” in petitioner’s symptomology; and a May 29, 2008 report from Dr. Ben Hill Passmore, finding petitioner disabled based on the effects of heavy metal poisoning. These materials were supplemented by the August 8, 2008 report of Raymond Singer, Ph.D., who opined that petitioner suffered from neuropsychological deficits, including dysfunctions of cognition, memory, emotion and judgment, as a result of exposure to neurotoxic chemicals at the site.
On September 10, 2008, petitioner’s case was considered by the Board of Trustees and remanded to the Medical Board. Petitioner’s counsel wrote the Medical Board enclosing medical journal articles discussing a link between sleep apnea and GERD and asthma, including an article from the Journal of Gastroenterology called The relationship between gastroesophageal reflux disease and obstructive sleep apnea (OSA), which stated, in relevant part:
*228 “There has been an accumulating body of research concerning the extraesophageal complications of gastroesophageal reflux disease over the past decade . . . The most recognized manifestations are non-cardiac chest pain, bronchial asthma, chronic bronchitis, chronic cough, and posterior laryngitis, as well as the acidic damage of dental enamel. This article focuses on the potential relationship between reflux disease and obstructive sleep apnea, which has been raised only more recently. Because of the decrease of primary peristalsis and the reduced production of saliva, as well as the diminished acid and volume clearance of the esophagus, sleeping can be considered as a risk factor of the reflux event by itself.” (39 J Gastroenterology [No. 9] 815, 815 [2004].)
The article discussed the “complex causal relationship” between OSA and GERD, noting, inter alia, that in certain studies conducted by Teramoto et al. in a young patient population, nocturnal GERD comprised an independent risk factor for snoring, insomnia, daytime somnolence and other sleep disturbances. Research by Suganuma et al. showed that GERD itself could cause sleep disorders. The article concluded:
“In the light of the above reviewed lines of evidence, there is a strong reason to believe that GERD and OSA potentially exhibit a two-way, mutually reinforcing relationship ... It is ... a plausible hypothesis that GERD contributes to the development of arousal from sleep . . .
“[T]he further narrowing of the pharyngeal region of the upper respiratory tract could lead to several forms of sleep-disordered breathing, such as OSA or snoring.” (Id. at 819.)
On December 5, 2008, petitioner’s case was once again considered by the Medical Board. Once again, the Medical Board denied petitioner’s application for WTC disability and recommended approval of his ODR application, finding, inter alia, that although there were reports of individuals exposed to the WTC having sleep apnea, there was “no evidence of any etiologie connection.” The Medical Board did not cite any research, or any evidence in the record, to support its determination. The final diagnosis was sleep deprivation due to sleep apnea. While acknowledging receipt of petitioner’s new evidence, including *229 reports that he had suffered heavy metal poisoning linked to WTC exposure, the board did not address in its conclusion petitioner’s claim that he suffered from heavy metal poisoning.
Subsequently, petitioner’s counsel wrote to the Board of Trustees, asserting, inter alia, that the board had failed to recognize the disabling nature of petitioner’s WTC conditions, including respiratory and gastrointestinal illnesses and heavy metal poisoning, and had “improperly disregarded medical evidence of a link between GERD and [a]sthma and sleep apnea.”
On May 13, 2009, petitioner’s case was considered by the Board of Trustees, which voted to deny his application for a WTC disability pension.
In September 2009, petitioner filed the instant article 78 petition alleging that respondents’ denial of his application for ADR was arbitrary and capricious, unreasonable and unlawful. The court denied the petition and dismissed the proceeding, finding that petitioner “failed to establish that the Medical Board arbitrarily and/or capriciously failed to find that requisite ‘causation’ between petitioner’s sleep apnea and his GI problems to the degree sufficient to warrant overturning the respondents’ determination.” (2010 NY Slip Op 30207[U], *13 [2010].)
We disagree, and now reverse. Administrative Code § 13-252 provides that a police pension fund member who is physically or mentally incapacitated for the performance of service as a proximate result of such service shall be retired on an ADR pension. The WTC Law (Administrative Code § 13-252.1) amended this provision to address cases involving WTC injuries. The WTC Law established a presumption that “any condition or impairment of health . . . caused by a qualifying World Trade Center condition” as defined in the Retirement and Social Security Law, “shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident . . . unless the contrary be proved by competent evidence” (subd [1] [a]).
Once a petitioner establishes that he worked the requisite number of hours at the site, the “World Trade Center presumption” puts the burden on the police department to show that the petitioner’s qualifying injury was not incurred in the line of duty (see Matter of Maldonado v Kelly, 86 AD3d 516, 519 [2011], lv granted 18 NY3d 808 [2012]).
Petitioner demonstrated that he was incapacitated for the performance of service as a proximate result of his WTC line-of- *230 duty toxic exposure injuries. The evidence showed that petitioner developed disabling sleep apnea in the wake of his WTC exposure, and that his apnea was in part attributable to severe gastroesophageal reflux disease, indisputably a WTC condition. The medical literature submitted by petitioner discusses the “two-way, mutually reinforcing relationship” between GERD and obstructive sleep apnea, noting, inter alia, that narrowing of the pharyngeal region of the upper respiratory tract can lead to sleep-disordered breathing such as obstructive sleep apnea or snoring.
Indeed, sleep apnea has been recognized as a WTC condition. The James Zadroga 9/11 Health and Compensation Act of 2010 (Pub L No 111-347, 124 US Stat 3623 [2011]), which re-opened the federal 9/11 Victims’ Compensation Fund, recognizes sleep apnea as a WTC condition for which a WTC claimant can receive medical care and compensation.
Respondents, in turn, have failed to rebut the presumption that petitioner’s condition was incurred in the line of duty. Respondents’ determination that there was no causal connection between petitioner’s disabling apnea and his 9/11 exposure, and the related determination that his GERD (which respondents do not dispute is a recognized WTC exposure injury) had no exacerbating effect on the apnea and his sleep deprivation, lacked a rational basis and were not based on credible evidence (see Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760-761 [1996]). Indeed, the Medical Board, while acknowledging receipt of petitioner’s medical evidence, summarily concluded, without citation to any medical journal or to any report in the record, that there was “no evidence” of any etiologic connection between petitioner’s GERD and his obstructive sleep apnea. In the absence of any credible explanation as to how the board arrived at this conclusion, and in the face of petitioner’s credible evidence to the contrary, we find that the determination of the board lacked a rational basis, and therefore, that respondents failed to rebut the presumption that petitioner incurred his injury in the line of duty (compare Maldonado, 86 AD3d at 520-521 [presumption rebutted where petitioner’s own physician could only equivocate as to whether a sarcoma that developed prior to 9/11 had been exacerbated by the petitioner’s WTC exposure]; Matter of Jefferson v Kelly, 51 AD3d 536 [2008] [presumption rebutted where record contained no evidence of a causal connection between WTC exposure and the petitioner’s claimed psychiatric injuries]).
*231 Respondents insinuate that petitioner’s weight, rather than WTC exposure, is the cause of his obstructive sleep apnea. Yet they do not refute the proposition that his apnea was at least in part attributable to his 9/11 rescue work, or that he suffered other 9/11 injuries, such as RADS and asthma that had an effect on his breathing, stamina and ability to exercise, and in turn his fitness level. Dr. Janus recognized that petitioner’s weight gain, on the order of 30 to 40 pounds, as well as upper airway trauma occurring with toxin exposure, contributed to petitioner’s sleep apnea. She noted that petitioner was in perfect health before 9/11 and that his weight gain was attributable to his inability to exercise, opining that it was “all related” to WTC exposure.
The avowed legislative intent of the WTC Law is to protect workers harmed by the September 11th tragedy. The Memorandum in Support of the law states:
“JUSTIFICATION: Many public employees, including police, fire, correction, sanitation and civilians rendered rescue, recovery and clean up at the former World Trade Center site and other designated locations. Early statistics indicate that these work- . ers were exposed to numerous hazards which may have, and may, impact their health in the years to come. If any public employee was exposed to these hazards and can no longer perform their jobs, even after retirement, this legislation will permit them to apply for an accidental disability retirement subject to the respective Retirement System review process by proving, by competent evidence, that the illness or injury was caused in connection with exposure to any elements at the World Trade Center site.
“It is beyond question that the State must recognize the services that these individuals provided not only to the victims and their families, but to all citizens of the City and State of New York and the United States of America. As a result, it is only fitting that they be protected when a disability ensues as a consequence of their selfless acts of bravery working at the World Trade Center site and other sites” (Assembly Mem in Support of L 2005, ch 104, 2005 McKinney’s Session Laws of NY, at 2008).
Respondents’ narrow reading of the law would defeat the avowed purpose of the statute, i.e., to protect 9/11 workers as a *232 result of their heroic efforts. Indeed, the full extent of the health challenges faced by these workers, arising from chronic, acute exposures to a toxic brew of substances at the site, may not be known for years. The statutory language “an impairment of health caused by a qualifying [WTC] condition” must be interpreted in a manner consistent with the underlying purposes of the statute.
Even assuming, arguendo, that petitioner’s sleep apnea was not “caused” by 9/11 exposure, petitioner would nonetheless be entitled to a WTC pension based on the Tobin rule. In Matter of Tobin v Steisel (64 NY2d 254 [1985]), the Court of Appeals held that if a disability pension applicant’s accidental line-of-duty injury precipitated the development of a latent condition or aggravated a preexisting condition, resulting in disability, the applicant is entitled to a line-of-duty disability pension. Thus, petitioner is entitled to a WTC pension because he has shown that his apnea and sleep deprivation were exacerbated by his WTC-related breathing and GI problems. Respondents’ claim that petitioner’s breathing and GI problems had absolutely no effect on his sleep apnea lacks any rational basis whatsoever.
Respondents’ determination that petitioner was not disabled by heavy metal poisoning was not supported by credible evidence and lacked a rational basis (see Matter of Cusick v Kerik, 305 AD2d 247 [2003], lv denied 100 NY2d 511 [2003]). While petitioner admittedly did not include “heavy metal poisoning” among the cited injuries in his application for WTC-ADR, it is undisputed that he was diagnosed with heavy metal poisoning, that he submitted medical reports to respondents documenting heavy metal poisoning, and that the Medical Board considered that evidence in making its determination.
A court may set aside the Board of Trustees’ denial of ADR benefits where it can conclude, as a matter of law, that a petitioner’s disability is the natural and proximate result of a service-related accident (see Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 60 NY2d 347, 352 [1983]). Since the evidence here demonstrates, as a matter of law, that petitioner suffered a WTC-related injury, we hereby reverse the order on appeal, set aside the board’s denial of ADR benefits, and remand for entry of an award of a WTC-ADR pension.
Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Carol R. Edmead, J.), entered February 9, 2010, which denied the petition seeking, *233 inter alia, to annul respondents’ determination denying petitioner’s application for accident disability retirement benefits, and dismissed the proceeding brought pursuant to CPLR article 78, should be reversed, on the law, without costs, the petition reinstated and the matter remanded for further proceedings.

. “Qualifying condition or impairment of health” is defined by the Retirement and Social Security Law as, inter alia, a “qualifying physical condition,” including (i) diseases of the upper respiratory tract such as rhinitis, sinusitis, pharyngitis and upper airway hyper-reactivity; (ii) diseases of the lower respiratory tract such as asthma, reactive airway dysfunction syndrome and different types of pneumonitis; (iii) diseases of the gastroesophageal tract including esophagitis and reflux, acute or chronic, caused by or aggravated by exposure; (iv) diseases of the skin; and (v) new onset diseases resulting from exposure, *226 including cancer, asbestos-related disease and heavy metal poisoning (§ 2 [36] [b], [c]).

. Barrett’s esophagus may be defined as abnormal changes in the cells of the esophagus caused by GERD. Barrett’s greatly increases the sufferer’s chances of developing esophageal cancer.