In the Matter of THOMAS CARDNO, Petitioner, v NEW YORK STATE AND LOCAL RETIREMENT SYSTEM, Respondent. [964 NYS2d 671]—

Egan Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Comptroller which, among other things, denied petitioner's application for World Trade Center accidental disability retirement benefits.

In 1998, petitioner, a police officer for the Port Authority of New York and New Jersey assigned to John F. Kennedy International Airport (hereinafter JFK), was diagnosed with mild chronic proctitis—a condition that petitioner's gastroenterologist, Joseph Tripodi, subsequently described as a limited or localized form of ulcerative colitis. On the morning of September 11, 2001, petitioner and a number of his fellow officers were dispatched to the World Trade Center site to search for survivors. Petitioner remained at the site for approximately 12 hours, after which he returned to his work assignment at JFK, where he worked extended shifts for the next 20 months.

Although petitioner's various gastrointestinal symptoms purportedly increased within two or three weeks of his work at the World Trade Center site, it was not until February 2003 that petitioner first sought treatment from Tripodi, who diagnosed petitioner as suffering from "left-sided acute and chronic colitis . . . suggesting chronic inflammatory bowel disease." Over the next few years, petitioner's symptoms waxed and waned but, despite medical intervention, petitioner began to miss significant periods of time from work and eventually was placed on administrative leave. Thereafter, in September 2007, petitioner filed applications for accidental disability retirement, performance of duty disability retirement and ordinary disability retirement benefits and, one year later, applied for World Trade Center accidental disability retirement benefits pursuant to Retirement and Social Security Law § 363 (g) (1) (a). Respondent awarded petitioner ordinary disability retirement benefits and denied his remaining applications.

Following a hearing and redetermination, a Hearing Officer upheld the respective denials finding, insofar as is relevant here, that although the World Trade Center presumption set forth in Retirement and Social Security Law § 363 (g) (1) (a) ap-

plied, respondent rebutted the presumption and petitioner otherwise failed to demonstrate a causal connection between his disability and his work at the World Trade Center site. The Comptroller accepted the Hearing Officer's findings, prompting petitioner to commence this CPLR article 78 proceeding to challenge the Comptroller's determination.[1]

Ordinarily, an applicant seeking accidental disability retirement benefits bears "the burden of proving causation" (*Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d 268, 276 [2012]). In response to the events of September 11, 2001, however, the Legislature amended Retirement and Social Security Law § 363 to provide that "if any condition or impairment of health is caused by a qualifying World Trade Center condition as defined in [Retirement and Social Security Law § 2 (36) (a)], it shall be presumptive evidence that it was incurred in the performance and discharge of duty and [was] the natural and proximate result of an accident not caused by [the applicant's] own willful negligence, unless the contrary be proved by competent evidence" (Retirement and Social Security Law § 363 [g] [1] [a]). The net effect of the statutory presumption is that "first responders [such as petitioner] need not submit any evidence—credible or otherwise—of causation [in order] to obtain the enhanced [accidental disability retirement] benefits" (*Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d at 281).[2] Rather, the burden falls to the relevant pension fund—here, respondent—to tender "affirmative [competent or credible] evidence to disprove causation" (*id.* at 282). If the presumption is rebutted, the burden of proof shifts back to the applicant to establish causation; if the presumption is not rebutted, Retirement and Social Security Law § 363 (g) (1) (a) "presumes causation and contemplates the award of [accidental disability retirement] benefits—even if the [applicant] offers no medical proof" (*Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d at 283).

Before addressing what the parties have framed as the dispositive issue—namely, whether respondent tendered competent evidence to rebut the statutory presumption—two preliminary matters warrant discussion. Although there is a credible argument to be made that petitioner did not demonstrate that his disability constituted either a "[q]ualifying World Trade Center

---

1. Petitioner, as so limited by his brief, challenges only the denial of his application for World Trade Center accidental disability retirement benefits.

2. *Bitchatchi* involved an analogous provision set forth in Administrative Code of City of NY § 13-252.1 (1) (a).

condition" or a "[q]ualifying physical condition" as those terms are defined under the statute (*see* Retirement and Social Security Law § 2 [36] [a], [c]) and, therefore, is not entitled to the benefit of the presumption in the first instance, respondent did not contest the applicability of the presumption at the administrative level. Accordingly, the question of whether the presumption may be applied where, as here, the claimed disability stems from the exacerbation of a preexisting condition (*see* Retirement and Social Security Law § 2 [36] [a] [iii]) or, more particularly, whether ulcerative colitis qualifies as a "disease[ ] of the gastroesophageal tract" (Retirement and Social Security Law § 2 [36] [c] [iii]) is not properly before us (*see Matter of Maldonado v Kelly*, 20 NY3d 268, 283-284 [2012]).

Additionally, we note that petitioner's claim for World Trade Center accidental disability retirement benefits is premised upon both the short-term stress occasioned by the 12 hours that he spent at the World Trade Center site on September 11, 2001 searching for survivors and the long-term stress associated with working extended hours at JFK for the 20 months thereafter. On this latter point, petitioner argues that the stress of performing extended security patrols at JFK following the terrorist attacks was comparable to the stress experienced by workers performing "rescue, recovery or cleanup operations" (Retirement and Social Security Law § 2 [36] [a], [e]) at various other locations, such as a morgue or a landfill. Thus, the argument continues, in light of "the avowed purpose of the statute, i.e., to protect 9/11 workers as a result of their heroic efforts" (*Matter of Dement v Kelly*, 97 AD3d 223, 231-232 [2012]), the statutory presumption should—in addition to encompassing the work performed by petitioner at the World Trade Center site—be extended and deemed applicable to the subsequent work performed by petitioner at JFK.

The flaw in petitioner's argument is that JFK does not fall within the geographic area comprising the "World Trade Center site" (Retirement and Social Security Law § 2 [36] [f]), the security patrols that petitioner performed at JFK do not constitute "rescue, recovery or cleanup operations" within the meaning of Retirement and Social Security Law § 2 (36) (e) and, finally, the work undertaken by petitioner in this regard did not occur during a "[q]ualifying period" as that term is defined in Retirement and Social Security Law § 2 (36) (g). Simply put, the work performed by petitioner at JFK does not fall within the purview of the statute and, therefore, the underlying presumption is not applicable to that portion of petitioner's claim. Accordingly, petitioner's application for World Trade Center ac-

cidental disability retirement benefits necessarily is limited to any disability that petitioner incurred as a result of the 12 hours he spent at the World Trade Center site on September 11, 2001.

With that in mind, we must now consider whether respondent tendered competent evidence to rebut the statutory presumption (*see* Retirement and Social Security Law § 363 [g] [1] [a]; *Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d at 281-282). To be sure, the bulk of the medical evidence adduced at the hearing with respect to the correlation between stress and the underlying cause, exacerbation or progression of ulcerative colitis— including the testimony of and written reports authored by Tripodi[3] and Frank Karpowicz, the gastroenterologist who examined petitioner on behalf of respondent—was inconclusive.[4] And, in that regard, there is no question that equivocal proof—or even the complete "absence of evidence tying the [asserted] disability to the [World Trade Center] exposure"—is insufficient to rebut the statutory presumption (*Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d at 282).

However, the record also contains published reports of various medical studies, one of which concludes that "[s]hort-term stress does not trigger exacerbation in ulcerative colitis." That conclusion, in turn, is consistent with Karpowicz's opinion that "if there was a direct temporal relationship" between the stress that petitioner experienced while working at the World Trade Center site and his underlying disease, "[the] flare-up [of the] disease would have occurred somewhat sooner than the stated time," i.e., February 2003, which is when petitioner first sought treatment from Tripodi and complained of an increase in his

---

**3.** We note in passing that after Tripodi authored his written report in October 2007, petitioner sent a letter to an unidentified individual expressing a desire to have Tripodi omit from the report certain portions of petitioner's medical history that were "contradictory to [his] application" and suggesting that Tripodi "close with a stronger statement with regard[ ] to the causal relationship" between petitioner's disability and his work at the World Trade Center site.

**4.** For example, Tripodi acknowledged in his written report that he was "unsure of the exact role of the events of September 11th on the course of [petitioner's] gastrointestinal conditions," noting that it was "possible" that the stress associated with that day "increased [petitioner's] stress levels and thus may have exacerbated [petitioner's] previously mild colitis that was originally limited" in scope. Similarly, Karpowicz testified that ulcerative colitis is "idiopathic in its etiology"—meaning that the cause remains unknown—and that, while certain infections or medications may exacerbate the disease, most of the time the medical community is unable to identify what causes "flares of the disease."

symptoms.[5] In this regard, although the record indeed indicates that petitioner incurred lost time from work between September 2001 and February 2003, the record also reflects that many of the reported sick days were attributed to ailments that appear to be unrelated to petitioner's current disability, such as heart palpitations and upper respiratory infections.

In our view, the cited medical study, Karpowicz's testimony and petitioner's own medical records constitute competent evidence to rebut the statutory presumption, thereby warranting the denial of petitioner's application for World Trade Center accidental disability retirement benefits—unless petitioner otherwise can establish the requisite causation. In this regard, and as noted previously, the record as a whole contains insufficient medical proof to establish a causal connection between petitioner's disability and the stress associated with his work at the World Trade Center site. Notably, Tripodi testified that he could not say what caused the initial presentation of the disease in petitioner, did not know at what point in petitioner's life "the [previously diagnosed] proctitis bec[a]me a more decisive or more extensive type of colitis that extended up the colon" and was unsure whether the disease "was partially caused by . . . stress or other things that were going on in [petitioner's] body," noting that he did not believe that anyone would be able to pinpoint "the exciting event that started [petitioner's] ulcerative colitis [to] flare[ ] up." Karpowicz offered similar testimony, stating that the medical community does not really know what causes ulcerative colitis to present in the first instance or what causes subsequent exacerbations or flares thereof. Karpowicz further opined that he did not believe that the events of September 11, 2001 "had any causation" with respect to petitioner's ulcerative colitis and indicated that he remained "somewhat uncertain" as to whether the associated stress "actually exacerbated [petitioner's] disease." Under these circumstances, petitioner failed to demonstrate the requisite causal connection and, as such, his application for World Trade Center accidental disability retirement benefits was properly denied. Petitioner's remaining arguments in support of his application, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Rose, J.P., Lahtinen and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

5. When pressed as to the basis for his conclusion, Karpowicz explained that "most stressors induce a problem in a relatively short period of time."