[4 NYS3d 156]

In the Matter of ANNMARIE SHELDON, Appellant, v RAYMOND KELLY, as Police Commissioner of the City of New York and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Respondents.

First Department, February 17, 2015

## APPEARANCES OF COUNSEL

*Jeffrey L. Goldberg*, Port Washington, for appellant.

*Zachary W. Carter, Corporation Counsel*, New York City (*Inga Van Eysden* and *Leonard Koerner* of counsel), for respondents.

## OPINION OF THE COURT

Acosta, J.

This appeal affords us the opportunity to address the World Trade Center (WTC) presumption (Administrative Code of City of NY § 13-252.1 [1] [a]), which places the burden on the police pension fund to show that a police officer's qualifying injury was not incurred in the line of duty, in the context of a diagnosis of fibromyalgia. Respondents argue that fibromyalgia is not a qualifying World Trade Center condition pursuant to Retirement and Social Security Law § 2 (36) (c). We find that fibromyalgia qualifies as a "new onset disease" (*see id.* § 2 [36] [c] [v]) and that respondents failed to rebut the WTC presumption. Petitioner is therefore entitled to accidental disability retirement (ADR) benefits as a matter of law.

Petitioner, a New York City police officer, was a first responder on September 11, 2001, and served over 300 hours at the World Trade Center site. On October 4, 2001, petitioner was assigned to a security post one block from Ground Zero. During her tour, she suffered shortness of breath, dizziness, nausea, and severe chest pains. An emergency care report from St. Vincent's Hospital on that date diagnosed "reaction to inhalation." In March 2002, petitioner was diagnosed with "fibromyalgia rhuumatic/myofascial pain syndrome."

In a letter dated February 20, 2008, Dr. Christopher J. Cimmino, a physician and surgeon board-certified in family practice, stated that petitioner had been under his care since January 2002, and was currently diagnosed with fibromyalgia, due to body and muscle aches. Petitioner's fibromyalgia diagnosis was also confirmed by Dr. Milagros Hernandez, her treating rheumatologist, in a summary report dated June 5, 2008.

On March 6, 2008, petitioner applied for ADR benefits, stating that as a result of her WTC service, she suffered from headaches, chest pain, and shortness of breath, and had been

diagnosed with fibromyalgia, pulmonary disease, heavy metal poisoning, hypothyroidism, alopecia areata, and body aches. An application for ordinary disability retirement benefits was filed by respondent police commissioner.

After three reviews of petitioner's application, the Medical Board of the pension fund concluded that petitioner was disabled from the performance of her duties by fibromyalgia and chronic fatigue syndrome. Without citing to any evidence, however, it concluded that those conditions were not caused by WTC exposure. The Medical Board also concluded that petitioner was not disabled by any other medical condition related to WTC exposure. The application was denied by the Board of Trustees of the pension fund as a result of a six-to-six vote, and petitioner retired with ordinary disability retirement benefits in November 2009.

In February 2010, petitioner filed a second application for ADR. The Medical Board considered the application on five occasions. In the second Medical Board finding on the second application, the Board addressed petitioner's history of heavy metal poisoning, stating that it was "unclear" due to the discrepancy between Dr. Cimmino's testing, which showed elevated levels of cadmium, and the police department tests, which indicated that petitioner's lead, cadmium and mercury levels were normal or less than the detectable range. It went on to note that although petitioner's fibromyalgia and chronic fatigue syndrome started soon after her WTC exposure, there was no relationship between heavy metal poisoning and fibromyalgia. Petitioner subsequently submitted several articles purporting to show a link between heavy metal poisoning and fibromyalgia. The Medical Board ultimately reaffirmed its position that petitioner was disabled by fibromyalgia and chronic fatigue syndrome and not a WTC-related condition. By letter dated October 13, 2011, the Board of Trustees denied petitioner's application for ADR.

Petitioner commenced the instant CPLR article 78 petition on January 31, 2012. In denying the petition, Supreme Court noted, among other things, that the Medical Board had concluded that fibromyalgia and chronic fatigue syndrome were not qualifying conditions under the WTC law. However, the court did not discuss the WTC presumption or analyze petitioner's claims pursuant to the presumption. It cited only one post 9/11 case (*Matter of Jefferson v Kelly*, 51 AD3d 536, 537 [1st Dept 2008]), in a string cite supporting the proposition

that "the Medical Board's finding will be sustained unless it lacks a rational basis, or is arbitrary or capricious" (2013 NY Slip Op 33847[U], *3 [Sup Ct, NY County 2013]).

Administrative Code § 13-252.1 provides that "any condition or impairment of health . . . caused by a qualifying World Trade Center condition" as defined in the Retirement and Social Security Law "shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident . . . unless the contrary be proved by competent evidence" (§ 13-252.1 [1] [a]; see Matter of Samadjopoulos v New York City Employees' Retirement Sys., 104 AD3d 551 [1st Dept 2013]). "Qualifying World Trade Center condition" is defined to include, among other conditions, "new onset diseases resulting from exposure as such diseases occur in the future including cancer, asbestos-related disease, heavy metal poisoning, and *musculoskeletal disease*" (Retirement and Social Security Law § 2 [36] [a], [c] [v] [emphasis added]).

In determining whether a particular illness or condition is covered under the statute, the Medical Board should avoid employing narrow definitions. Thus, this Court rejected a narrow reading of the statute in *Matter of Dement v Kelly* (97 AD3d 223, 231-232 [1st Dept 2012]), finding that it

> "would defeat the avowed purpose of the statute, i.e., to protect 9/11 workers as a result of their heroic efforts. Indeed, the full extent of the health challenges faced by these workers, arising from chronic, acute exposures to a toxic brew of substances at the site, may not be known for years. The statutory language 'an impairment of health caused by a qualifying [WTC] condition' must be interpreted in a manner consistent with the underlying purposes of the statute."

Consistent with the legislature's intent, the statute refers to "diseases" in the most general terms to include syndromes and disorders (see e.g. Retirement and Social Security Law § 2 [36] [c] [ii] ["diseases of the lower respiratory tract, including but not limited to . . . reactive airway dysfunction *syndrome*" (emphasis added)]; see also § 2 [36] [d] [i] [diseases of the psychological axis, including post-traumatic stress disorder, anxiety, depression, or any combination of such conditions]).

Fibromyalgia is defined as "a syndrome that causes chronic, widespread musculoskeletal pain" (Lisa R. Sammaritano, M.D.,

*An In-Depth Overview of Fibromyalgia*, Hospital for Special Surgery, http://www.hss.edu/conditions_in-depth-overview-fibromyalgia.asp [last updated Dec. 30, 2009]; *see also* Mosby's Dictionary of Medicine, Nursing & Health Professions 695 [9th ed 2012] [Fibromyalgia is "a form of nonarticular(*) rheumatism characterized by musculoskeletal pain, spasms, stiffness, fatigue, and severe sleep disturbance"]). Therefore, under an expansive reading of the statute, fibromyalgia falls within the broad parameters of a musculoskeletal disease.

Here, the evidence shows that petitioner did not have fibromyalgia before September 11, 2001, and that she developed disabling fibromyalgia and chronic fatigue syndrome in the wake of her WTC exposure.

Because it was "caused by a qualifying [WTC] condition," petitioner's fibromyalgia is presumed to have been "incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by [her] own willful negligence, unless the contrary be proved by competent evidence" (Administrative Code § 13-252.1 [1] [a]). Respondents bear the burden of showing that petitioner's qualifying injury was not incurred in the line of duty (*Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d 268, 276 [2012]; *Samadjopoulos*, 104 AD3d at 552). The Board of Trustees' determination must be supported by credible evidence in the record (*Bitchatchi*, 20 NY3d at 281).

The significance of the presumption is that, "unlike ordinary ADR claimants, first responders need not submit any evidence—credible or otherwise—of causation to obtain the enhanced benefits" (*id.* ["The legislature created the WTC presumption to benefit first responders because of the evidentiary difficulty in establishing that non-trauma conditions . . . could be traced to exposure to the toxins present at the WTC site in the aftermath of the destruction"]). Thus, the Board "cannot deny ADR benefits by relying solely on the absence of evidence tying the disability to the exposure" (*id.* at 282).

A review of *Bitchatchi*, *Macri* and *Maldonado* (decided together) is instructive on the issue of causation. In *Bitchatchi*, approximately one year after WTC exposure, the petitioner discovered a cyst near her rectum, and a biopsy revealed that

---

* Nonarticular is defined as "affecting or involving soft tissues (as muscles and connective tissues) rather than joints" (Merriam-Webster Online Dictionary, nonarticular [http://www.merriam-webster.com/medical/nonarticular]).

she had rectal cancer. The Medical Board recommended disapproval of ADR benefits because the "causal factor" of the cancer was not WTC exposure, but ulcerative colitis, a condition that had been surgically addressed about 20 years earlier (*id.* at 277). The Board cited a 2009 medical journal article and referenced "clinical data" on the growth rates of tumors, and found it "highly likely" that the mass discovered in October 2002 was present before September 11, 2001 (*id.* at 278). The Court held that the Board failed to present credible evidence to rebut the WTC presumption, observing that the medical journal article stated that "the long-term fate . . . in the surgical management of ulcerative colitis has yet to be determined" (*id.* at 282 [internal quotation marks omitted]), and that the Board "failed to include the actual [clinical] data in the record, effectively precluding us from assessing whether its finding of no-causation was supported by credible evidence" (*id.* at 282). "Because the Medical Board bore the burden on the issue of causation," the Court concluded, "this deficiency in proof is fatal" (*id.*).

In *Macri*, the petitioner was a first responder who, in August 2002, was diagnosed with lung cancer, which had metastasized to his sacrum. An X ray taken on 9/11 revealed no evidence of lung cancer. The Medical Board recommended disapproval of ADR benefits, stating "with a high degree of certainty" that the lung cancer existed before 9/11, "noting that there was substantial literature quantitating the doubling times of primary pulmonary lung cancers" (20 NY3d at 279 [internal quotation marks omitted]). The Court held that the Board failed to rebut the presumption, stating that, as in *Bitchatchi*, "the Board failed to identify or include the specific literature or data upon which it relied" (*id.* at 283).

Petitioner Maldonado had been diagnosed with cancer before 9/11; he argued that WTC exposure aggravated his condition. The Board of Trustees asserted that the burden of proof remained with petitioner to demonstrate that his exposure aggravated or exacerbated the preexisting cancer. However, this argument had not been preserved, so the Court of Appeals simply applied the presumption to the petitioner's claim that his cancer was aggravated by the exposure. The Court noted that the Board focused on the equivocal nature of the petitioner's evidence, in particular, describing the opinion of the petitioner's doctor as speculative and conjectural. The Court held that the Board failed to rebut the presumption since

"petitioner carried no burden to offer any evidence of causation. Simply put, the Board could not rely on petitioner's deficiencies to fill its own gap in proof" (*id.* at 284).

Similarly, respondents have failed to rebut the presumption that petitioner's qualifying condition, fibromyalgia, was caused by hazards encountered at the WTC site. Indeed, while in *Bitchatchi* and *Macri* the Board cited to articles and data but failed to include the evidence in the record, in the present case, the Board did not even purport to cite to any specific evidence. In fact, without citing to any credible evidence, the Board simply stated that "there is no evidence that [petitioner's fibromyalgia and chronic fatigue syndrome] is in any way related to her World Trade Center exposure." That the articles petitioner submitted on the correlation between heavy metal poisoning and fibromyalgia may have been speculative at best is of no moment. There is no evidence that the Board relied on the articles, and, in any event, it "could not rely on petitioner's deficiencies to fill its own gap in proof" (*Bitchatchi*, 20 NY3d at 284). Furthermore, as in *Samadjopoulos* (104 AD3d at 552-553), respondents "do not even purport to offer an alternative cause for petitioner's debilitating conditions." Indeed, the record contains no proof whatsoever that petitioner's disabling conditions were attributable to any other cause. Petitioner is therefore entitled to ADR benefits as a matter of law (*Bitchatchi*, 20 NY3d at 283).

Accordingly, the order of the Supreme Court, New York County (Paul Wooten, J.), entered March 11, 2013, which denied the petition to annul the determination of respondent Board of Trustees of the New York City Police Pension Fund, Article II, dated October 13, 2011, denying petitioner's application for accidental disability retirement benefits under Administrative Code of City of NY § 13-252.1, and dismissed the proceeding brought pursuant to CPLR article 78, should be reversed, on the law, without costs, the petition granted, the determination annulled, and the matter remanded to respondent Board of Trustees for further proceedings in accordance herewith.

MAZZARELLI, J.P., SAXE, CLARK and KAPNICK, JJ., concur.

Order, Supreme Court, New York County, entered March 11, 2013, reversed, on the law, without costs, the petition granted, the determination of respondent Board of Trustees of the New York City Police Department Pension Fund, Article II, an-

nulled, and the matter remanded to respondent Board of Trustees for further proceedings consistent herewith.