Matter of Fragola v DiNapoli (2021 NY Slip Op 07596)





Matter of Fragola v DiNapoli


2021 NY Slip Op 07596


Decided on December 30, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 30, 2021

532344
[*1]In the Matter of Raphael Fragola, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, et al., Respondents.

Calendar Date:November 15, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Pritzker, JJ.

Seelig Law Offices, LLC, New York City (Philip Seelig of counsel), for petitioner.
Letitia James, Attorney General, Albany (Sarah L. Rosenbluth of counsel), for respondents.



Clark, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's applications for accidental disability retirement benefits and World Trade Center accidental disability retirement benefits.
Petitioner, formerly a police officer with the New York City Police Department, was involved in recovery and cleanup operations at the World Trade Center site following the September 11, 2001 terrorist attacks. He responded to the site shortly after the first tower fell and worked 12-hour shifts at the site for approximately one month thereafter. Following the attacks, petitioner, who had experienced depressive episodes since he was in college, sought out mental health treatment for a number of difficulties, including feelings of anxiety and depression and difficulty managing relationships and emotions. In 2002, he transferred to a law enforcement agency on Long Island, where he worked without medical restrictions until 2014.
In November 2014, petitioner attended a self-help retreat in Arizona as part of his continuing efforts to improve his mental health. At the retreat, he was pressed to discuss his experiences from 9/11. As a result of extensive questioning on the topic, petitioner experienced two psychotic episodes. First, petitioner left the retreat early, walked through the desert to the airport, believing that he was being followed by terrorists, where he attempted to purchase an airline ticket in cash for a different flight home in order to get on a plane that would not be bombed; on the flight, he believed that he was seated with terrorists and that the plane would be blown up. Second, once back in New York, petitioner continued to believe that he was being followed, and he decided to go to his precinct for his safety, at around 4:00 a.m., where his behavior prompted other officers to forcefully remove his firearm and call his union representative. He later assaulted that union representative when he believed the representative was trying to force him into a car that had a bomb in it. As a result, petitioner was involuntarily admitted to a psychiatric facility, where he was diagnosed with major depressive disorder, recurrent, severe, with psychosis. He was also placed on medical leave, and he did not return to work thereafter. Upon his release, petitioner began to confront his experiences from 9/11 in therapeutic settings, and several clinicians, including those with whom he had treated prior to the incident, made the additional diagnosis of posttraumatic stress disorder (hereinafter PTSD) stemming from his police work at the World Trade Center site.
In 2015, petitioner applied for both accidental disability retirement benefits and World Trade Center accidental disability retirement benefits, alleging that he was permanently disabled due to depression and PTSD. Respondent New York State and Local Retirement [*2]System denied both applications, finding that, although petitioner was permanently incapacitated from the performance of his duties, "the disability" was not caused by his work at the World Trade Center site or any accident within the meaning of the Retirement and Social Security Law. At petitioner's request, a hearing was held, at which the Retirement System conceded that petitioner was permanently incapacitated from the performance of his duties as a police officer, that the terrorist attacks on 9/11 constituted an accident and that the World Trade Center presumption applied, placing the burden on the Retirement System to disprove that petitioner's disability was the natural and proximate result of that accident (see Retirement and Social Security Law § 363 [g] [1] [a]). The medical examiner retained by the Retirement System, Steven Fayer, rejected petitioner's PTSD diagnoses and generally concluded that, although petitioner suffers from a disabling major depressive disorder, with psychotic features, that disability is endogenous, or biological, in nature and "unrelated to" or "not a result of" his police work at the World Trade Center site. A Hearing Officer upheld the denial of petitioner's applications, finding that the Retirement System had, by virtue of Fayer's opinion, rebutted the World Trade Center presumption. Crediting Fayer's opinion over the opinions of petitioner's treating psychiatrist and psychologists, the Hearing Officer similarly rejected the PTSD diagnoses and concluded that petitioner had otherwise failed to establish a causal connection between his major depressive disorder and his police work at the World Trade Center site. Respondent Comptroller adopted the Hearing Officer's findings, and this CPLR article 78 proceeding ensued.
"Ordinarily, an applicant seeking accidental disability retirement benefits bears the burden of proving causation" (Matter of Cardno v New York State & Local Retirement Sys., 105 AD3d 1173, 1174 [2013], lv denied 22 NY3d 851 [2013] [internal quotation marks and citation omitted]). "In response to the events of September 11, 2001, however, the Legislature amended Retirement and Social Security Law § 363 to provide that[,] 'if any condition or impairment of health is caused by a qualifying World Trade Center condition as defined in [Retirement and Social Security Law § 2 (36) (a)], it shall be presumptive evidence that it was incurred in the performance and discharge of duty and [was] the natural and proximate result of an accident not caused by [the applicant's] own willful negligence, unless the contrary be proved by competent evidence'" (Matter of Cardno v New York State & Local Retirement Sys., 105 AD3d at 1174, quoting Retirement and Social Security Law § 363 [g] [1] [a]; see Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d 268, 283 [2012]; Matter of Sheldon v Kelly, 126 AD3d 138, 142 [2015], lv denied 25 NY3d 908 [2015]).[FN1] "The net effect [*3]of the statutory presumption is that first responders such as petitioner need not submit any evidence — credible or otherwise — of causation in order to obtain the enhanced accidental disability retirement benefits. Rather, the burden falls to the relevant pension fund — here, [the Retirement System] — to tender 'affirmative competent or credible evidence to disprove causation'" (Matter of Cardno v New York State & Local Retirement Sys., 105 AD3d at 1174 [brackets omitted], quoting Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d at 281-283; see Matter of McAuley v Kelly, 103 AD3d 449, 451 [2013]). "'[A]n accident which produces injury by precipitating the development of a latent condition or by aggravating a preexisting condition is a cause of that injury'" (Matter of Meyer v McGuire, 64 NY2d 1152, 1154 [1985], quoting Matter of Tobin v Steisel, 64 NY2d 254, 257 [1985]; see Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d at 283-284, 284 n 4). "If the presumption is rebutted, the burden of proof shifts back to the applicant to establish causation; if the presumption is not rebutted, Retirement and Social Security Law § 363 (g) (1) (a) 'presumes causation and contemplates the award of accidental disability retirement benefits — even if the applicant offers no medical proof'" (Matter of Cardno v New York State & Local Retirement Sys., 105 AD3d at 1174 [brackets omitted], quoting Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d at 282-283; see Matter of Kennedy v DiNapoli, 106 AD3d 1429, 1430 [2013], lv denied 22 NY3d 851 [2013]).
Momentarily setting aside the Comptroller's decision to reject petitioner's multiple PTSD diagnoses and turning first to his major depressive disorder, or, more specifically, aggravation of that qualifying psychological condition (see Retirement and Social Security Law § 2 [36] [a], [d] [i]; see generally Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d at 283-284, 284 n 4; Matter of Tobin v Steisel, 64 NY2d at 259-260; Matter of Scannella v New York State Comptroller, 119 AD3d 1048, 1049 [2014]), we cannot agree that the Retirement System set forth affirmative, competent evidence sufficient to rebut the World Trade Center presumption. Fayer, focused on challenging the legitimacy of petitioner's PTSD diagnoses, gave far less attention to petitioner's undisputed depression and little, if any, attention to the question of aggravation thereof; he seemingly concluded that petitioner's major depressive disorder, with psychotic features, was in no way impacted by his experiences on 9/11 — the forced discussion of which, at least in part, led to two psychotic episodes and, resultantly, petitioner's involuntary commitment to a psychiatric facility.[FN2] [FN3] However, Fayer himself acknowledged that depressive symptoms result [*4]from "a build-up" of reasons, that the November 2014 incident "certainly" can be seen as triggering the subject psychotic episodes or, more to the point, that said episodes "may have been triggered by some thoughts that [petitioner] had involving his work in search and recovery after 9/11."
Apart from impermissibly relying upon a lack of proof as to when petitioner first sought out and received relevant treatment (see Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d at 284; Matter of Collins v Kelly, 37 Misc 3d 377, 382 [Sup Ct, NY County 2011]),[FN4] Fayer posited that major depressive disorder is, "for the most part," "endogenous in nature" and "would have surfaced even if [petitioner] had not participated in 9/11." Relatedly, he went on to state that there is "a strong genetic substrate" here given that petitioner's mother had been diagnosed with schizophrenia, asserting that an individual is at "a much higher risk of developing either a mood disorder with depression or bipolar disorder or schizophrenia if [the individual has] a first-degree relative who has that condition." When pressed on that point, Fayer stated that there are "literally thousands" of papers on the hereditary nature of severe mental illness, but none of those papers was submitted into evidence at the hearing, enumerated or otherwise discussed.
Recognizing that there is no objective laboratory test to diagnose a mental health disorder like depression, if Fayer was going to assert as fact that there are definitive biological reasons for petitioner's qualifying condition — and that his depression would have reached the point of disability no matter the circumstances — it was incumbent upon Fayer, or the Retirement System generally, to provide some support for that far-reaching conclusion (see Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d at 282-283). "Although the [World Trade Center] presumption is not a per se rule mandating enhanced accidental disability retirement benefits for first responders in all cases" (Matter of McAuley v Kelly, 103 AD3d at 451 [citation omitted]; see Matter of Samadjopoulos v New York City Employees' Retirement Sys., 104 AD3d 551, 552 [2013]), in our view, accepting Fayer's generalized conclusions, on their own, as adequate to rebut the statutory presumption afforded to petitioner — that his depression was in fact aggravated by his experiences on 9/11 — renders the existence of the presumption illusory. We therefore reverse the Comptroller's finding that the Retirement System rebutted the World Trade Center presumption (see Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d at 282-283; Matter of Sheldon v Kelly, 126 AD3d at 144; Matter of Ginther v Kelly, 109 AD3d at 739; Matter of Samadjopoulos v New York City Employees' Retirement Sys., 104 AD3d at 552; Matter of McAuley v Kelly, 103 AD3d [*5]at 451). As a result, petitioner's application for World Trade Center accidental disability retirement benefits must be granted (see Retirement and Social Security Law § 363 [g] [1] [a]).[FN5] In light of our conclusion, we need not address the Comptroller's conclusion as to petitioner's PTSD diagnoses.
Egan Jr., J.P., Lynch, Aarons and Pritzker, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as denied petitioner's application for World Trade Center accidental disability retirement benefits; petition granted to that extent and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.



Footnotes

Footnote 1: Bitchatchi, and several other cases cited herein, involve an equivalent presumption contained in Administrative Code of the City of NY § 13-252.1 (1) (a).

Footnote 2: Fayer broadly opined, in language largely mimicking the legal standard, that "the depression that [petitioner] manifests is not a result of his work as a police officer" and was not "incurred as a result of the World Trade Center rescue, recovery or clean-up operations."

Footnote 3: The Hearing Officer found that there was no basis upon which to conclude that petitioner contrived or exaggerated the November 2014 incident for the purpose of benefits or this proceeding.

Footnote 4: The Hearing Officer deemed 2008 to be the year that petitioner first sought out and received mental health treatment, reasoning that the medical records submitted in this proceeding pertained to only treatment from 2008 onward — notwithstanding multiple record sources suggesting that petitioner received treatment in 2001 and/or 2002. Although not specifically challenged on review to this Court, in our view, the Hearing Officer's rationale, as with the case where an expert relies upon a lack of proof to rebut the subject presumption, cuts against the stated legislative purpose of initially alleviating an applicant for World Trade Center accidental disability retirement benefits from the burden of submitting causation evidence.

Footnote 5: Petitioner sets forth no argument regarding his application for ordinary accidental disability retirement benefits.